UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-187 (DSD)
Civil No. 05-348 (DSD)

| | | |
|---|---|---|
| GARY D. SCHULTZ, | ) | |
| | ) | |
| Petitioner, | ) | GOVERNMENT'S MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| v. | ) | MOTION UNDER 28 U.S.C. § 2255 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

Respondent, through its attorneys, Thomas B. Heffelfinger, United States Attorney for the District of Minnesota, and Michael L. Cheever, Assistant United States Attorney, submits this response in opposition to the motion of Petitioner Gary Schultz pursuant to Title 28, United States Code, Section 2255.

**FACTUAL AND PROCEDURAL BACKGROUND**

From 1982 through 2001, defendant Gary Schultz was employed by Lund Boats. During that time, Schultz embezzled over $14,000,000 from his employer. The factual background, with cites to the record, is set forth in the Brief of Appellee filed in the criminal case with the Eighth Circuit. 2002 WL 32390389, *1-*4 (Dec. 26, 2002).

Schultz was charged in a two-count information on June 17, 2002. Count 1 charged him with mail fraud in violation of Title 18, United States Code, Section 1341. Count 2 charged him with engaging in a monetary transaction in criminally derived property in violation of Title 18, United States Code, Section 1957.

Schultz entered a plea agreement with the government and pled guilty on July 1, 2002, to both charges. The plea agreement left open the question of whether a 4-point enhancement applied under guideline section 2F1.1(b)(8) because a financial institution was affected as a result of Schultz's criminal conduct.

On October 11, 2002, Schultz was sentenced. This Court found the 4-point enhancement applied and imposed a sentence of 63 months imprisonment. The judgment was filed on October 15, 2002.

Schultz appealed his sentence, and the Eighth Circuit Court of Appeals affirmed this Court's judgment on May 23, 2003. United States v. Schultz, 2003 WL 21213257 (8th Cir. May 23, 2003) (unpublished). Schultz did not petition the Supreme Court for a writ of certiorari, and the judgment became final on August 22, 2003.

Schultz is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota. He has moved pursuant to Title 28, United States Code, Section 2255 to vacate, set aside, or correct his sentence.

**SCHULTZ'S CLAIMS**

Petitioner Gary Schultz asserts two grounds in support of his Section 2255 motion. First, he contends his sentence was improper in light of the recent Supreme Court decisions of Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005). Second, he argues the Eighth Circuit Court

of Appeals erred in affirming this Court's imposition of a 4-point enhancement under Section 2F1.1(b)(8)(B) of the Sentencing Guidelines.

Both of Schultz's claims are untimely, and his motion must therefore be denied. Even were this Court to consider the claims, the motion would still fail. The first claim could have been raised in the original appeal and was not. Moreover, the Blakely and Booker decisions do not apply retroactively on collateral review. The second claim cannot be raised in a Section 2255 motion. To the extent Schultz is simply challenging the guideline enhancement, he raised the issue in his original appeal and may not raise it in this motion.

## ARGUMENT

### I. SCHULTZ'S MOTION IS UNTIMELY.

Gary Schultz's petition pursuant to Title 28, United States Code, Section 2255 is untimely. There is a one-year period of limitation for motions under Section 2255. The limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

> retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. The one-year limitation period for Schultz to file a Section 2255 petition expired before he filed this petition.

Schultz's judgment of conviction became final on August 22, 2003. Clay v. United States, 537 U.S. 522, 527 (2003). The one-year period of limitation for his Section 2255 motion expired August 22, 2004. Schultz did not file his motion until February, 2005.

No grounds for tolling the limitation period exists in this case. The tolling provisions of Section 2255(2) and (4) are not available to Schultz. He does not suggest the period for filing a petition was tolled due to any governmental action which prevented him from pursuing his claims nor does he allege any newly discovered evidence which could not have been discovered sooner. See Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001).

The tolling provision of Section 2255(3) also is not applicable in this case. The second of Schultz's two claims does not rely on any recent developments in the law. The first of Schultz's two claims relies on the Supreme Court's recent decision in Blakely and Booker. Although these decisions adopted new rules of procedure, they have not been "made retroactively applicable to

cases on collateral review" as required for the tolling provision of Section 2255(3) to apply.

The Supreme Court did not announce that either Blakely or Booker should be retroactively applied to cases on collateral review as required by Section 2255. In fact, in Schriro v. Summerlin, 124 S. Ct. 2519, 2522-26 (2004), an opinion issued on the same date as Blakely, the Supreme Court strongly implied that Blakely is not to be applied retroactively.

In Tyler v. Cain, 533 U.S. 656, 663 (2001), the Supreme Court held that a second or successive habeas petition may be approved by the Court of Appeals based on a new rule of constitutional law only where the Supreme Court itself has previously declared that new rule applicable retroactively to cases on collateral review.

Tyler involved the interpretation of the state habeas statute, 28 U.S.C. § 2244, which allows a second or successive habeas petition in federal court only where the court of appeals certifies that the petition either presents new evidence of innocence, or "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The statute regarding federal prisoners, Section 2255, uses identical language for successive petions and nearly identical language for the tolling provision of Section 2255(3).

In Tyler, the Supreme Court interpreted the statute to mean only it can declare a new rule of constitutional law retroactive to cases on collateral review for purposes of successive petitions:

> [T]he Supreme Court is the only entity that can "ma[k]e" a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court. The only way the Supreme Court can, by itself, "lay out and construct" a rule's retroactive effect, or "cause" that effect "to exist, occur, or appear," is through a holding. The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts.

Id. at 663. The Supreme Court further declined to resolve whether the rule at issue there (the decision in Cage v. Louisiana, 498 U.S. 39 (1990)) applied retroactively. It simply held that where the decision had not been held retroactive by the Supreme Court prior to the time the prisoner filed his motion for permission to file a successive habeas petition, the district court and the court of appeals were compelled to decline the motion and the Supreme Court affirmed that judgement. Tyler, 533 U.S. at 667-68.

This ruling applies in this case, where the defendant seeks to file an untimely Section 2255 petition based on Blakely or Booker. Because the Supreme Court has never held either case applies retroactively to cases on collateral review, the tolling provision of Section 2255(3) is not applicable.

The Eighth Circuit has not yet directly addressed whether Blakely or Booker apply retroactively to cases on collateral

review. Courts addressing the issue have all concluded neither Blakely nor Booker applies retroactively to cases on collateral review because the Supreme Court has not so directed. See Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) (neither Blakely nor Booker applies retroactively to cases on collateral review); In re Anderson, 396 F.3d 1336, 1339-40 (11th Cir. 2005) (same); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) (Booker does not apply retroactively to cases on collateral review); Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004) (Blakely not applicable to second or successive cases on collateral review); Cook v. United States, 386 F.3d 949, 950 (9th Cir. 2004) (same); Cuevas v. Derosa, 386 F.3d 367, 367-68 (1st Cir. 2004) (same); Leonard v. United States, 383 F.3d 1146, 1148 (10th Cir. 2004) (same).

Schultz did not file his Section 2255 motion until at least February 15, 2005. This was more than a year after his judgment became final, and no tolling provisions apply. His motion is untimely and should be denied.

## II. SCHULTZ'S FIRST CLAIM UNDER BLAKELY AND BOOKER WAS WAIVED BY HIS FAILURE TO RAISE IT ON APPEAL AND CANNOT BE RAISED ON COLLATERAL REVIEW.

The first ground asserted by Gary Schultz in his motion is that this Court imposed a 4-point enhancement under the sentencing guidelines based on facts which were not found by a jury or admitted by him. The claim is based on the Supreme Court decisions

in Blakely and Booker. Even if this claim had been raised in a timely Section 2255 motion, it would fail. The claim was waived because Schultz failed to raise it on appeal. Had the claim been timely raised and not already waived it would still fail because claims under Blakely and Booker may not be raised in cases on collateral review.

### A. Schultz Failed To Raise a Blakely or Booker Issue on Appeal and Therefore Waived the Claim.

It is well established that a Section 2255 motion "may not do service for an appeal," and is not a vehicle by which a petitioner may raise an issue which should have been raised on direct appeal. United States v. Frady, 456 U.S. 152, 162 (1982). Matters which could have been raised on direct appeal will not be considered under Section 2255. See United States v. Wilson, 997 F.2d 429, 431 (8th Cir. 1993) ("A § 2255 motion is not a substitute for direct appeal . . . ."); Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994) ("A petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not.").

This Court reviews claims regarding unappealed errors to which no contemporaneous objection was made under the "cause and actual prejudice" standard. A "convicted defendant must show both (1) 'cause' excusing his double procedural fault, and (2) 'actual prejudice' resulting from the error of which he complains." Frady, 456 U.S. at 168; see also Auman v. United States, 67 F.3d 157, 161

(8th Cir. 1995). Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Petitioner gives no reason for failing to appeal any of these issues and therefore cannot satisfy the "cause and prejudice" standard.

Schultz's first claim, based on Blakely and Booker, could have been in his original appeal. He has not shown cause for his failure to do so. Neither has he shown there was any error which worked to his substantial disadvantage. His motion on this ground should be denied.

**B. Schultz's First Claim Should Also Be Denied Because Blakely and Booker Do Not Provide a Basis for Relief in This Case.**

Schultz contends in the first ground of his motion that this Court violated his Sixth Amendment rights. He indicates this Court erred by applying an enhancement under the Sentencing Guidelines based on its own findings rather than upon admissions of the defendant or findings by a jury. Schultz cites to Blakely v. Washington, 124 S. Ct. 2531 (2004). The decision in Blakely must be read together with the Supreme Court's more recent decision in United States v. Booker, 125 S. Ct. 738 (2005).

Given the Supreme Court's recent decision in Booker, Schultz essentially claims constitutional error in his sentence because it

was based on facts found by the district court and imposed under the mandatory Guidelines regime.

In Blakely, the Supreme Court held that the Sixth Amendment prohibits sentences greater than "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537 (emphasis in original). Recently, the Supreme Court, in Booker, held the federal guidelines' system of judge-found enhancements violated the Sixth Amendment as construed by Blakely. Booker, 125 S. Ct. at 749-50. To remove this Sixth Amendment impediment, the Supreme Court excised Title 18, United States Code, Section 3553(b)(1), the provision of the Sentencing Reform Act that had made the Guidelines mandatory. Id. at 756-57. In so doing, the Supreme Court thereby rendered the Guidelines effectively advisory.

**1. The decisions in Blakely and Booker do not apply retroactively on collateral review.**

The decisions in Blakely and Booker offer no relief to Schultz in this case because they do not apply retroactively on collateral review. The Supreme Court has long held its new constitutional decisions are not necessarily applicable to proceedings that were completed when the new decisions were rendered. See Allen v. Hardy, 478 U.S. 255 (1986) (jury selection rule of Batson v. Kentucky, 476 U.S. 79 (1986), not applicable to cases on collateral review); Solem v. Stumes, 465 U.S. 638 (1984) (custodial interrogation rule of Edwards v. Arizona, 451 U.S. 477 (1984), not

applicable to cases on collateral review); Michigan v. Payne, 412 U.S. 47 (1973) (prophylactic sentencing rule of North Carolina v. Pearce, 395 U.S. 711 (1969), not retroactive); Halliday v. United States, 394 U.S. 831 (1969) (guilty plea acceptance rule of McCarthy v. United States, 394 U.S. 459 (1969), not retroactive); Stovall v. Denno, 388 U.S. 293 (1967) (identification procedure decisions of United States v. Wade, 388 U.S. 218 (1967), and Gilbert v. California, 388 U.S. 263 (1967), not retroactive); Johnson v. New Jersey, 384 U.S. 719 (1966) (interrogation rules of Escobedo v. Illinois, 378 U.S. 478 (1964), and Miranda v. Arizona, 384 U.S. 436 (1966), not retroactive); Tehan v. Shott, 382 U.S. 406 (1966) (Griffin v. California, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); Linkletter v. Walker, 381 U.S. 618 (1965) (exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961), not retroactive).

The governing rule was set forth in Justice O'Connor's plurality opinion in Teague v. Lane, 489 U.S. 288 (1989). Justice O'Connor endorsed Justice Harlan's principles "that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." Id. at 303. The latter principle is subject to only two narrow exceptions, which Justice O'Connor adopted from Justice Harlan with some modification. First, a new rule should be applied to cases on collateral review

if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Id. at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. Id. at 312-13.

The Supreme Court has limited the class of new rules which concern fundamental fairness to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990). It has stated: "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. 461, 478 (1993) (quoting Teague, 489 U.S. at 311). In Teague, Justice O'Connor stated: "Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313.[1]

[1]The Supreme Court, despite many decisions addressing new rules of constitutional law, has yet to find any retroactive under the Teague rule. See Levan v. United States, 128 F. Supp. 2d 270, 277-78 (E.D. Pa. 2001) (collecting cases).

Although the relevant portion of Justice O'Connor's opinion was a four-justice plurality opinion, her Teague standards have been applied by a majority of the Supreme Court, with some modification for sentencing rules, in a number of cases. See, e.g., O'Dell v. Netherland, 521 U.S. 151, 156-57 (1997); Graham v. Collins, 506 U.S. 461, 466-67, 477 (1993); Sawyer v. Smith, 497 U.S. 227, 229 (1990).

As the Court explained in O'Dell v. Netherland, "[t]he Teague inquiry is conducted in three steps." 521 U.S. at 156. The first step is to determine whether the defendant's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception applies, the defendant is not entitled to the benefit of the decision and the inquiry ends.

In this case, Schultz's conviction became final on August 22, 2003, ninety days after the Eighth Circuit affirmed this Court's judgment. Clay v. United States, 537 U.S. 522, 525 (2003). The conviction was therefore final before the Supreme Court's decisions

in Blakely, on June 24, 2004, and Booker, on January 12, 2005. Thus, the inquiry moves to the second step.

The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467 (quoting Teague v. Lane, 489 U.S. at 301) (emphasis in original). A rule may be new even though it finds general support in prior cases. Sawyer v. Smith, 497 U.S. at 236. The test is whether, at the time Blakely and Booker were decided, a "reasonable jurist" would have felt "compelled" to adopt the rules each stated. O'Dell v. Netherland, 521 U.S. at 164; Graham v. Collins, 506 U.S. at 477. Under this standard, Blakely and Booker each clearly adopted a new rule.

Four years before Blakely and Booker, in Apprendi, the Supreme Court held that any fact which increases a statutory maximum sentence must be determined by a jury. Subsequently, every circuit court of appeals addressed whether this rule applied to determinations made, as in this case, in order to calculate a sentence under the guidelines within the statutory maximum. Without exception, every court held that the Apprendi rule was inapplicable to the Sentencing Guidelines, so long as the final sentence did not exceed the statutory maximum sentence on any count

of conviction.[2] That body of law makes unquestionable that the results in Blakely and Booker were not "dictated" by the Apprendi precedent, and reasonable jurists were not compelled so to conclude.

Because Blakely and Booker constitute new rules of procedure, the question remains whether they are subject to either of the exceptions outlined in Teague -- for new substantive rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness.

The fact that Blakely is not subject to either of these exceptions was essentially decided by the Supreme Court on the same day that it decided Blakely. See In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("[T]he Supreme Court has strongly implied that Blakely is not to be applied retroactively.").

In Schriro v. Summerlin, 124 S. Ct. 2519 (2004), the Court held that the decision in Ring v. Arizona, 536 U.S. 584 (2002), does not apply retroactively to cases already final on direct

[2] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004), cert. granted, judgment vacated, 125 S. Ct. 1024 (2005); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochoa, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

review. In Ring, the Court applied the Apprendi principle to a death sentence imposed under the same Arizona sentencing scheme at issue in Summerlin. The Ring Court concluded that, because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge.

In Summerlin, the Court determined that Ring presented a new rule of procedure which was not retroactively applicable under the Teague formulation.[3] First, it confirmed that Ring (and by extension, Apprendi) is in fact a procedural rule subject to Teague. The Court explained that substantive rules "narrow the scope of a criminal statute by interpreting its terms [or] place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." 124 S. Ct. at 2522. In contrast, rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. at 2523. In a statement directly applicable to Blakely and Booker, the Court concluded, "rules that regulate only the *manner of determining* the defendant's culpability are procedural." Id. (emphasis in

[3]In Teague v. Lane, 489 U.S. 288 (1989), the Court held that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." 489 U.S. at 303.

original). "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision-making authority in this fashion are prototypical procedural rules . . . ." Id.

The Summerlin Court also rejected the contention that the jury requirement for sentencing factors established in Apprendi and Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any . . . 'ha[s] yet to emerge.' Tyler v. Cain, 533 U.S. 656, 667 n.7 (2001) (quoting Sawyer v. Smith, 497 U.S. 227, 243 (1990))." Summerlin, 124 S. Ct. at 2523. The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all*, we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." Id. at 2525 (emphasis in original).

This result is directly applicable to the Blakely and Booker holdings. If, as in Summerlin, the requirement that a jury determine an aggravating factor which leads to imposition of the

death penalty is not so fundamental to require retroactive application, surely the same holding applies to the guideline enhancement issues to which Blakely and Booker are addressed.[4]

Moreover, courts of appeals having considered the issue have concluded neither Booker nor Blakely announced a watershed procedural rule retroactively applicable to cases on collateral review. As succinctly addressed by the Seventh Circuit:

> Booker does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.

McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); see also Humphress v. United States, 398 F.3d 855, 862-63 (6th Cir.

---

[4]Indeed, prior to Summerlin, every appellate court to address the issue, applying similar reasoning, held that the decision in Apprendi is not retroactively applicable in cases on collateral review. See, e.g., Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003); Coleman v. United States, 329 F.3d 77, 90 (2d Cir.), cert. denied, 540 U.S. 1061 (2003); United States v. Jenkins, 333 F.3d 151 (3d Cir.), cert. denied, 540 U.S. 932 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304, 307-10 (5th Cir. 2002); Goode v. United States, 305 F.3d 378, 382-85 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841, 842-44 (7th Cir. 2002); United States v. Moss, 252 F.3d 993, 997-1001 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664, 667-71 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213, 1218-19 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

2005); United States v. Lucero, 2005 WL 388731 (10th Cir. Feb. 18, 2005) (unpublished); Varela v. United States, 2005 WL 367095, *2-*3 (11th Cir. Feb. 17, 2005).

The Eighth Circuit's retroactivity analysis of Apprendi is dispositive of the retroactivity analysis of Blakely and Booker. As the Eighth Circuit emphasized in United States v. Moss, the prototypical example of a watershed ruling is the "sweeping rule" announced in Gideon v. Wainwright, 372 U.S. 335 (1963), requiring counsel be provided in all criminal trials for serious offenses. 252 F.3d 993, 998 (8th Cir. 2001). Moss reasoned Apprendi did "not fall within the same vein as Gideon's pronouncement that one who is unable to afford a lawyer '*cannot* be assured a fair trial unless counsel is provided for him.'" Id. (emphasis in original). The Eighth Circuit concluded:

> we do not believe Apprendi's rule recharacterizing certain facts as offense elements that were previously thought to be sentencing factors resides anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial.

Id. Accordingly, this Court should follow Moss to hold Blakely and Booker are simply clarifications of Apprendi, and are unavailable to Schultz on collateral review because his conviction became final before Blakely and Booker were decided.

**2. Schultz's sentence would not be affected if Booker were applied.**

Even if Schultz had raised a Blakely or a Booker claim on direct appeal, it would not affect his sentence. The claim would

be reviewed for plain error. Schultz could not meet the third or fourth prongs of the plain error standard because he cannot show that his substantial rights were affected by this Court's treatment of the Sentencing Guidelines as mandatory rather than advisory and he cannot show that his sentence was a miscarriage of justice.

Prior to the decision in Booker, the Supreme Court held in Blakely it was error for a sentencing court to apply the Sentencing Guidelines in a mandatory fashion and apply guideline enhancements based on judge-made findings.[5] In light of Booker it no longer is error for the sentencing court to impose guideline enhancements based on judge-made findings. Instead, the error is for sentencing courts to apply the Sentencing Guidelines in a mandatory, rather than advisory, manner. See United States v. Sayre, 2005 WL 544819, *1 (8th Cir. Mar. 9, 2005).

As the First Circuit Court of Appeals recently articulated the issue:

> The Booker error is that the defendant's Guidelines sentence was imposed under a mandatory system. The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.

United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005); United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir.) (error

[5]This was true, at least where the final sentence exceeded the applicable "statutory maximum" which could be supported by jury findings or the defendant's admissions.

is not imposition of guideline enhancements based on judicial fact finding; error is application of the guidelines as mandatory), pet. for cert. filed, 73 U.S.L.W. 3531 (U.S. Feb. 23, 2005).

The distinction is significant in determining whether there was prejudice in this case. The question is whether, had Schultz been sentenced using advisory guidelines, his sentence would have been lower. In this case, Schultz cannot meet his burden of showing it would have been.

Nor can Schultz satisfy the fourth prong of the plain error standard. He cannot show that his sentence at the bottom of the advisory guideline range was a miscarriage of justice.

Even if Schultz had raised a Blakely or a Booker issue on direct appeal, he would not be entitled to resentencing because he could not meet the plain-error standard of showing that his substantial rights were affected or that his sentence was a miscarriage of justice. His motion under Section 2255 should be denied.

## III. SCHULTZ'S SECOND CLAIM, CHALLENGING THE APPLICATION OF GUIDELINE SECTION 2F1.1(b)(8)(B), MAY NOT BE RAISED IN THIS SECTION 2255 MOTION.

The second ground asserted by Gary Schultz in his motion is somewhat ambiguous. He appears to argue the Eighth Circuit Court of Appeals acted on an inadequate record when it affirmed this Court's imposition of a 4-point enhancement under guideline section

2F1.1(b)(8). Section 2255 does not provide relief from such an objection.

To the extent Schultz's second ground is a challenge to this Court's finding that guideline section 2F1.1(b)(8)(B) applied, Section 2255 again provides no relief. This is the claim Schultz raised in his appeal and which was rejected by the Eighth Circuit. United States v. Schultz, 2003 WL 21213257, *1 (8th Cir. May 23, 2003) (unpublished).

The Eighth Circuit has held, time and again, that "claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Dall v. United States, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam) (quoting United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)); see also English v. United States, 998 F.2d 609, 612-13 (8th Cir. 1993); Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993). It is well settled that a motion under § 2255 is not a substitute for a direct appeal and is not the proper means to complain about simple errors. See Poor Thunder v. United States, 810 F.2d 817, 821-22 (8th Cir. 1987).

Dated: March 22, 2005

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

s/ Michael L. Cheever

BY: MICHAEL L. CHEEVER
Assistant U.S. Attorney
Attorney ID No. 192582